


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CASE NO. 9:05-CR-19** |
| | § | |
| **JEROME DEION CUTWRIGHT** | § | |

**FINDINGS OF FACT AND RECOMMENDATION ON MOTION TO SUPPRESS**

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the United States District Court, Eastern District of Texas, by order of the District Court, this matter was referred to the undersigned magistrate judge for a hearing and the submission of findings of fact and a report and recommendation on *Defendant's Motion to Suppress*[1] [Clerk's doc. #28].

**A. Background**

**The Motion**

Pursuant to Rule 41(h) of the Federal Rules of Criminal Procedure, Defendant brings his *Motion to Suppress* all evidence obtained from a search of his residence.[2] On January 11, 2006, this

[1] See *Order* referring motion. [Clerk's doc. #36].

[2] *See Motion to Suppress.* Originally, Mr. Cutwright's motion sought to suppress all evidence and all statements made by him. However, at the suppression hearing, the parties agreed that the only relevant issues before the Court were whether the search warrant executed by law enforcement officers on the day in question was a "bare bones" warrant and whether officers properly knocked and announced their presence before entering Mr. Cutwright's residence. *(Tr., p. 4).* Accordingly, Defendant's *Motion to Suppress* has narrowed in scope since its filing. The Court will, therefore, only address the evidence at

Court conducted a hearing on the suppression motion in the manner and form mandated by the Federal Rules of Criminal Procedure. Having heard the evidence, the Court recommends the motion be denied.

**Recitation of Facts**

**i. The Indictment**

Defendant Jerome Deion Cutwright is charged in a two - count Indictment returned by a federal grand jury in the Eastern District of Texas [Clerk's doc. #1]. Count I charges that on or about the 21st day of March, 2005, in the Eastern District of Texas, Jerome Deion Cutwright, Defendant herein, did knowingly and intentionally possess, with the intent to distribute, an amount greater that 5 grams, a mixture or substance containing cocaine base, to-wit: crack cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

Count II charges that on or about the 21st day of March, 2005, in the Eastern District of Texas, Jerome Deion Cutwright, Defendant herein, did knowingly and intentionally possess, with the intent to distribute, an amount greater that 500 grams, a mixture or substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

**ii. Evidence Presented : The Search and Arrest**

As its first witness, the Government called Sheriff William Don Michael, the elected Sheriff of San Augustine County, Texas.[3] *(See Transcript* [Clerk's doc. #43], *p. 5)*. Michael has spent fourteen (14) years in law enforcement and is certified in the State of California. Michael was on duty as sheriff on March 21, 2005, and was aware that a search warrant for Defendant's residence

issue during the hearing.

[3] At the hearing, the Government offered two witnesses, Sheriff William Don Michael and Deputy Sheriff Bob Lowe. *(Tr., pp. 5, 25).* The search warrant, search warrant affidavit, and return were admitted as Government's Exhibit "C". *(Tr., p. 5).*

was signed that day at approximately 7:40 a.m. *(Tr., p. 7)*.

That morning, three state troopers with the Texas Department of Public Safety came to the sheriff's department and all parties discussed how the search warrant obtained to search Cutwright's residence would be executed. *(Tr., p. 8)*. The law enforcement officers involved in the search decided that Michael and four of his deputies would make the initial entry into the residence and the troopers would cover the outside of the house. *Id.* Michael advised the officers that the search warrant was not a "no knock" warrant and that the officers would be required to knock and announce their presence. *(Tr., p. 9)*.

The officers arrived at the Cutwright's residence sometime between 8:30 a.m. and 8:45 a.m. that morning. *(Tr., p. 10)*. Michael approached the residence and he and Deputy Lowe walked onto the front porch. *(Tr., pp. 11 - 12)*. Michael knocked on a closed screen door which was outside of the closed wooden door of the house. *(Tr., p. 12)*. Michael then announced "sheriff's office". *Id.* Hearing no movement in the house, Michael knocked a second time and once again announced "sheriff's office". *Id.* Hearing no movement in the residence, Michael knocked a third time and announced "search warrant". *(Tr., p. 13)*. Michael then opened the screen door and checked the lock on the wooden door, finding the door to be locked. *Id.* Michael told Lowe to make an entrance into the residence and Lowe utilized a T-post driver as a battering ram to break open the wooden door. *Id.* Michael estimated that approximately 20 - 30 seconds expired from the time he first knocked and announced until he forcibly entered Cutright's residence. *(Tr., pp. 13 - 14)*.

Deputy Lowe also testified for the Government. *(Tr., p. 25)*. Lowe testified that he was on

the front porch with Michael when they executed the search warrant.[4] *(Tr., p. 26)*. According to Lowe, Michael, in performing the knock and announce, knocked loudly on the door and spoke in a loud tone. *(Tr., p. 27)*.

**B. Legal Analysis**

**i. The search warrant and accompanying affidavit**

This Court conducts a two - step analysis when considering a motion to suppress evidence obtained pursuant to a search warrant. *See United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997). The first step is to determine whether the good - faith exception to the exclusionary rule applies. *Id.* The motion to suppress evidence should be denied if the good - faith exception applies. *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997), *cert. denied* 522 U.S. 976 (1997). The good - faith exception to the exclusionary rule provides "that evidence obtained by law enforcement officials acting in objectively reasonable good - faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988) (citing *United States v. Leon*, 468 U.S. 897, 922-23(1984)). "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search warrant pursuant to the warrant." *Id.* Nonetheless, the officers' good faith cannot be established, for example, when a warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Leon*, 468 U.S. at 923.

A police officer may rely in good faith on the validity of a warrant so long as the warrant is

[4] Government Exhibit "A" was admitted into evidence. This exhibit depicted the position of the officers at the scene prior to entry into the house. *(Tr., pp. 10 - 11, 12).*

supported by more than a "bare bones" affidavit. *Cisneros*, 112 F.3d at 1278. However, an officer may not obtain a warrant based on a bare bones affidavit and then rely on other officers who are ignorant of the circumstances under which the warrant was obtained to conduct the search. *United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986). Of course, the officer may not conduct the search himself based on his own bare bones affidavit. *Id.* Again, an affidavit is "bare bones" if it is so deficient in demonstrating probable cause that it renders an officer's belief in the existence of probable cause completely unreasonable. *Cisneros*, 112 F.3d at 1278. A bare bones affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Laury*, 985 F.2d 1293, 1311 n. 23 (5th Cir. 1993) (citing *United States v. Satterwhite*, 980 F.2d 317 (5th Cir. 1992)).

In looking at the warrant, a magistrate's determination is entitled to great deference by the reviewing courts. *Illinois v. Gates*, 462 U.S. 213, 236 n.10 (1983). The issuing magistrate need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Jones v. United States*, 362 U.S. 257, 271 (1960).

In relevant part, the affidavit supporting the search warrant and sworn to by Deputy Lowe sets forth the following:

> 7. On March 19, 2005, affiant received information from a confidential informant who, for purposes of this affidavit, will be referred to as Confidential Informant #1 (CI #1). Affiant believes CI #1 to be credible, reliable, and worthy of belief in that CI #1 has provided Department of Public Safety Narcotics Officer Paul Hopson with information in the past on more than five (5) occasions concerning controlled substances violations and other criminal offenses, including cocaine, and on each and every occasion the information provided was true, reliable, accurate, and correct. Information provided by CI #1 to affiant and participating officers has led to the seizure of controlled substances and probable cause to arrest and indict more than five (5) individuals in the trafficking and possession of illegal controlled substances and criminal offenses, CI #1 knows cocaine by sight and inspection and has correctly identified cocaine for DPS Officer Paul Hopson. ... Affiant considers CI #1 to be

extremely reliable.

CI#1 advised affiant that, within the past twenty four hours (24) of the presentment of this affidavit to this Court, CI #1 had personally been to the residence of JEROME CUTWRIGHT, described herein as the suspected place and premises located at Rt. 5 Box 6420 in San Augustine County, Texas and had personally observed JEROME CUTWRIGHT in possession of a quantity of cocaine that was possessed for the purpose of sale and distribution. CI #1 advised that CI #1 observed JEROME CUTWRIGHT in possession of two (2) plastic bags wrapped with grey tape, weighing approximately two (2) kilos apiece, which contained cocaine. CI #1 further stated that while CI #1 was at said residence, CI #1 observed JEROME CUTWRIGHT conduct a sale and delivery of cocaine.

8. Based on my training and experience in narcotics law enforcement, I know that individuals involved in the illegal distribution of cocaine often buy the cocaine in bulk form which usually consist of packages weighing approximately one (1) kilo apiece which are then broken down in to smaller "baggies" for resale to individuals, and individuals often possess the substances in a manner consistent with that as observed by CI #1 at the suspected place and premises.

The affidavit informed the state magistrate that a reliable confidential informant had been in Cutwright's residence within twenty-four (24) hours and had personally observed Cutwright in possession of cocaine. However, instead of concluding the affidavit with that statement, the affiant further noted that the informant described the amount of cocaine present and advised how it was wrapped. The affiant then states that, based upon the his training and experience, the amount present and the manner in which the cocaine was packaged (two plastic bags wrapped with grey tape, weighing approximately two kilos apiece) was consistent with individuals involved in the illegal distribution of cocaine.

Therefore, the seminal question in this matter is whether this information from a credible and reliable confidential informant, standing alone, constitutes more than a "bare bones" affidavit, and entitles reliance on the good faith exception to the exclusionary rule.

Cutwright contends that the Fifth Circuit Court of Appeals has identified several indicia of

probable cause which prevent an affidavit based on information from a confidential informant from being a bare bones affidavit. *See Memorandum of Law in Support of Defendant's Motion to Suppress, p. 5*. Cutwright argues that these indicia include: (1) whether the informant's statements are against his or her on penal interest, *United States v. McWaine*, 243 F.3d 871, 874 (5th Cir. 2001), *cert. denied* 537 U.S. 921 (2002); *United States v. McKeever*, 5 F.3d 863, 864 (5th Cir. 1993); (2) whether the information has been corroborated by independent investigation or contemporary observations of police, *McWaine*, 243 F.3d at 874; *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130-31 (5th Cir. 1997), *cert. denied* 522 U.S. 819 (1997); (3) the degree of detail of the information provided by the informant, *Cisneros*, 112 F.3d at 1278-79; and (4) whether the informant's reliability is corroborated by something other than unsupported conclusions of the affiant, *Barrington*, 806 F.2d at 531. *See also United States v. Shugart*, 117 F.3d 838, 843 -844 (5th Cir. 1997). Cutwright argues that the affidavit in this case bears none of these indicia of probable cause.

At the outset, this Court notes that the indicia set forth in *Shugart* were "indicia of probable cause" contained in a particular affidavit which would make it reasonable for law enforcement officers to believe that the procured warrants were valid. *Shugart*, 117 F.3d at 844. Apparently, the Fifth Circuit Court of Appeals did not intend that the indicia serve as a bright line test or give guidance as to how many of the indicia must be satisfied to allow good - faith reliance.

It does not appear that the informant's statements in this matter were against his or her penal interest. Also, it does not appear that the information provided by the informant was corroborated by independent investigation or the observations of police officers. Therefore, Cutwright would prevail considering the first two factors alone. However, as stated above, the informant did provide the officers with more than minimum detail concerning Cutwright's possession of cocaine,

describing how the cocaine was packaged and the approximate weight.

The final *Shugart* indicia of probable cause requires some analysis. Cutwright contends that the affidavit contains no information to corroborate the informant's reliability other than the unsupported conclusions of Deputy Lowe. He, therefore, argues that th affidavit is akin to the affidavit in *Barrington*. *Defendant's Memorandum, p. 6.* However, the affidavit in *Barrington* stated only that the officer received information from a confidential informant who is known to the officer and has provided information in the past that has led to arrest and convictions. *Barrington*, 806 F.2d at 531. There is no indication that the confidential informant in *Barrington* had observed a criminal act and provided officers with the approximate weight of the controlled substances involved or the description of how those controlled substances were packaged. Therefore, it appears that the Government would prevail under indicia three and four. Not being able to completely resolve the issue at this point, this Court now looks relevant case law in this circuit.[5]

An affidavit is bare bones when the affidavit merely alleges that a police officer "has cause to suspect and does believe" that contraband is located on the premises of the place to be searched. *United States v. Brown*, 941 F.2d 1300, 1303 n.1 (5th Cir. 1991) (quoting *Nathanson v. United States*, 290 U.S. 41 (1933)). An affidavit that merely states that officers "have received reliable information from a credible person and do believe that heroin is stored in a home" is also bare bones and conclusory. *Id.* (Quoting *Aguilar v. Texas*, 378 U.S. 108 (1964)). An affidavit that states that "the confidential informant told affiant police officer that a man named Wayne was dealing drugs out of a home located at 1014 North Jackson Street, San Angelo, Texas" without more would not be

---

5 In doing so, this Court finds persuasive the analysis of Judge Rodriguez from the Western District of Texas, who was confronted with the identical issue. *See United States of America v. Gallegos*, No. SA-04-CR-81-XR, 2005 U.S. Dist. LEXIS 32057, 2005 WL 1323296 (W.D. Tex. Oct. 12, 2005). This Court borrows liberally from Judge Rodriguez's well - reasoned opinion.

sufficient. *See United States v. Chambers*, 132 F.App'x 25, 30, No. 04-106108, 2005 U.S. App. LEXIS 9106, 2005 WL 118531, (5th Cir. May 19, 2005). It is clear that the affidavit in question is not as conclusory as the affidavits set forth above.

The Fifth Circuit Court of Appeals has also approved affidavits which are similar to the affidavit in question. In *United States v. McKnight*, 953 F.2d 898 (5th Cir. 1992), *cert. denied* 504 U.S. 989 (1992), the informant stated in the affidavit that he had been to McKnight's residence within the past 72 hours and that a methamphetamine cooking process was taking place. *Id.* at 904. The informant stated that the process was in its final stages and that methamphetamine was hidden in an out building on the property. *Id.* The Fifth Circuit concluded that the affidavit set forth details regarding the informant's presence at McKnight's residence and his observations therein by which a magistrate could judge whether the informant had a sufficient basis of knowledge of the operations being conducted at McKnight's residence. *Id.* The Fifth Circuit further held that the officer's assertion in the affidavit that the confidential informant was "reliable" and had "furnished him with information in the past that has proved to be reliable and true" provided the magistrate with sufficient indicia of the reliability and veracity of the informant's tip. *Id.* at 905. The Court held that where the "existence of probable cause itself was at least likely established by the affidavit, it is impossible to argue that the warrant was facially invalid and that an officer's reliance on it could be unreasonable". *Id*. This Court sees little difference between the affidavit in question and the one in *McKnight*.

The affiant in the case at bar, like the one in *McKnight,* did more than make a conclusive statement that an informant had said that controlled substances were present at the defendant's residence. The affidavit informed the state magistrate of the basis of that conclusion: that the

informant was in the residence and had actually observed an illegal transaction take place. Importantly, the informant provided details such as the approximate amount of cocaine present and the fact that it was wrapped with duct tape, which were more than just conclusions of wrong-doing.[6]

In conclusion, this Court affords deference to the magistrate's decision to issue the warrant. *Gates*, 462 U.S. at 236. In addition, the Fifth Circuit Court of Appeals has approved a similar affidavit in *McKnight*. Therefore, this Court finds that the affidavit in this case is more than a "bare bones" affidavit and, therefore, the officers executing the search warrant were entitled to rely upon it. Cutwright's motion to suppress is denied on this ground.

**ii. <u>The "knock and announce" issue</u>**

Cutwright contends that the knock and announce, if it happened at all, was tepid. *(Tr., p. 32)*. Cutwright also contends that the amount of time between the knock and announce and the entry of the residence was much shorter than the approximate time given by the officers who executed the warrant. *Id.*

The Government argues that it was reasonable to force entry into the home after knocking and announcing three times and waiting 20 - 30 seconds for a response. *(Tr., pp. 35 - 36).* The Government further contends that this fact is especially true since cocaine is easily and quickly disposed of. *Id.*

In *United States v. Banks*, 540 U.S.31 (2003), the United States Supreme Court held that an interval of 15 to 20 seconds from the officers' knock and announcement until forced entry was

---

[6] The Government admitted a diagram of Cutwright's residence as part of of Government's Exhibit "C". This diagram was included as part of the affidavit and is admittedly incorrect as to the layout of Cutwright's residence. *(Tr., p. 18).* Cutwright argues that the diagram does nothing to corroborate the informant. *(Tr., pp. 30 - 31).* This Court finds that the diagram neither corroborates the information given by the informant nor undermines his credibility. Although the affidavit states that Deputy Lowe had been to the residence, the record is not clear as to who actually provided the information contained in the diagram - the informant, Lowe, or a third party.

reasonable, given the exigency of possible destruction of evidence. *Id.* at 38. Here, uncontroverted evidence establishes that Michael knocked and announced three times before the forced entry. *(Tr., pp. 13 - 13)*. Deputy Lowe's testimony confirmed that Michael knocked very loudly on the door and spoke in a loud tone. *(Tr., p. 27).* Sheriff Michael demonstrated for the Court how hard that he knocked and how loudly he announced his presence. *(Tr., p. 24).* This Court finds that Sheriff Michael knocked and announced loudly enough to adequately announce the officer's presence at the residence. Regarding the elapsed time between the initial knock and announce, Michael testified that his estimation was that between 20 - 30 seconds expired but that he was not absolutely sure because he was not looking at his watch and timing it. *(Tr., pp. 13 - 14, 18 - 19).* Obviously, officers are not required to carry stopwatches when executing search warrants. Although Michael cannot say for certain exactly how many seconds elapsed, this Court accepts his estimation because there is no evidence to the contrary and given the fact that he knocked, announced, and waited for a response three separate times. As in *Banks,* the knock and announce was reasonable in this case, especially because cocaine is easily flushed down the toilet or can be otherwise disposed quickly.

**C. <u>Conclusion and Recommendation of the Court</u>**

Accordingly, having considered the factors and evidence presented, and based upon the findings of fact and conclusions law stated herein, the undersigned magistrate recommends that the District Court deny Defendant's *Motion to Suppress* [Clerk's doc. #28].

**D. <u>Objections</u>**

Pursuant to 28 U.S.C. § 636(b)(1)(C), all parties are entitled to serve and file written objections to the report and recommendation of the magistrate judge within ten (10) days of receipt of this report. Failure to file specific, written objections to the proposed findings of facts,

conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the District Judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Douglass v. United Serv. Auto. Ass'n.,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*); 28 U.S.C. § 636(b)(1). The constitutional safeguards afforded by Congress and the courts require that, when a party takes advantage of his right to object to a magistrate's findings or recommendation, a district judge must exercise its nondelegable authority by considering the actual evidence and not merely by reviewing and blindly adopting the magistrate's report and recommendation. *See Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir. 1983); *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. 1981) (per curiam).

**SIGNED this the 7th day of February, 2006.**

KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE